IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CR-23-037-RAW |
| | ) |
| TEON RAYNARD ROBBINS; and | ) |
| ANTWON MARQUIS WILLIAMS, | ) |
| | ) |
| Defendants. | ) |

## FINDINGS AND RECOMMENDATION

This matter comes before this Court on Defendant Teon Raynard Robbins' Motion to Suppress (Docket Entry #59). The Motion has been joined by Defendant Antwon Marquis Williams (Docket Entry #62). This Motion was referred to the undersigned for the entry of Findings and a Recommendation by United States District Judge Ronald A. White, the judge presiding over this case. On June 7, 2023, this Court conducted a hearing and received evidence and argument in support and opposition to the Motion. The hearing was attended by Ryan Bondura for the United States, Warren Gotcher for Defendant Robbins, and Stephen Layman for Defendant Williams. Defendants were also personally present.

On March 1, 2023, Oklahoma Highway Patrol Trooper Daran Koch was patrolling on Interstate 40 in Sequoyah County, Oklahoma. He was present to patrol for traffic violations but actually used such violations to "look beyond the initial traffic violation" and

engage in drug interdiction. Trooper Koch observed a black Dodge Ram traveling 74 miles per hour in a 70 miles per hour zone. He pulled the vehicle over at mile marker 307/308.

As he approached the vehicle, Trooper Koch observed Defendant Robbins as the passenger and Defendant Williams as the driver of the vehicle. He informed Defendant Williams of the nature of the traffic violation and told him he would be receiving a warning and not a traffic citation. Trooper Koch invited Defendant Williams to sit in his patrol unit.

Trooper Koch engaged Defendant Williams in a conversation while he sat in the patrol unit. Defendant Williams acknowledged he was driving over the posted speed limit but told Trooper Koch that he believed there was a tolerance of five over the speed limit before he would be pulled over. Trooper Koch stated Defendant Williams' interpretation of the law was incorrect. He informed Defendant Williams that the warning would not cost anything, discussed Williams' travel plans, the duration of his stay, the identity of his passenger, asked who owned the vehicle, and conversed about the nature of his trip.

Defendant Williams stated that the vehicle was a rental and Trooper Koch asked him to retrieve the rental agreement. Defendant Williams stated the vehicle was rented by Defendant

Robbins.

Trooper Koch then approached the passenger side of Defendants' vehicle. He asked Defendant Robbins for the rental agreement but Robbins neither had the agreement in his possession nor had it available in an e-mail on his cell phone. Defendant Robbins then telephoned the vehicle rental agency and requested that they send him a copy of the rental agreement. Approximately eleven minutes into the traffic stop, Trooper Koch was able to view the rental agreement. He then returned to his patrol unit to prepare the traffic warning.

While awaiting the rental agreement, Trooper Koch communicated with his partner, Trooper Craft, through their patrol units' computers. Both troopers were canine officers and had their dogs in their vehicles. Upon Trooper Craft's arrival at the scene, Trooper Koch signaled Trooper Craft to run his dog around Defendants' vehicle. Upon doing so, Trooper Craft's dog provided a "positive alert", indicating the presence of drugs in the vehicle.

Trooper Koch indicated that he had a suspicion that Defendants were involved in the transportation of drugs. He stated that he based this suspicion upon various observations which he knew to indicate drug activity. These observations included (1) the

presence of a picture of a child around the speedometer of the truck which Trooper Koch believed served as a "reminder of the mission [Defendant] was on"; (2) tags on the blue gym bags which demonstrated that the bags were new – a common practice of drug dealers, according to Trooper Koch; and (3) indications in Defendant Williams' actions such as "deceptive" answer, crossing his arms, an observable pulse in his stomach, hesitation in answering where Defendant Williams was coming from, stating "um" while answering questions, chewing his lips "a lot", stated "Oklahoma" when asked where he was coming from and ultimately not providing an answer other than stating he came up with "Yukon", and Defendant Williams was "too polite" and called Trooper Koch "sir" and "boss."

After the dog alerted on Defendants' vehicle, Trooper Craft took Defendant Robbins and placed him in his patrol unit and Trooper Koch had already placed Defendant Williams in his unit. The troopers then commenced a search of Defendants' vehicle.

They observed the blue gym bags in the back seat of the vehicle. Inside the bags were 100 zip lock bags containing approximately 100 pounds of methamphetamine. Marijuana was also found in a separate gym bag. Neither Defendant was in possession of a valid Oklahoma medical marijuana card. A review of the dash

4

camera video of the encounter from the time Defendants' vehicle was stopped by Trooper Koch to the time the dog provided a "positive alert" on the vehicle shows an elapsed time of approximately 13 minutes.[1]  Defendants were arrested at the scene.

On March 8, 2023, the grand jury sitting in this District returned a single count Indictment against Defendants charging them with Possession with Intent to Distribute Methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) as well as 18 U.S.C. § 2.  The Indictment specifically alleges Defendants "did knowingly and intentionally possess with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance. . . ."

The Fourth Amendment to the Constitution protects citizens from unreasonable searches and seizures conducted by government officials, including law enforcement.  Traffic stops implicate the Fourth Amendment.  However, "[a] seizure for a traffic violation justifies a police investigation of that violation." Rodriguez v. United States, 575 U.S. 348, 354, 135 S.Ct. 1609, 1614 (2015). "A traffic stop is justified at its inception if an officer has . . . reasonable articulable suspicion that a particular motorist

---

[1] *See* Gov't Exh. No. 1.

has violated any of the traffic . . . regulations of the jurisdiction." United States v. Winder, 557 F.3d 1129, 1134 (10th Cir.), cert. denied, 557 U.S. 943, 129 S.Ct. 2881 (2009). The Court "looks only at whether the stop was 'objectively justified'; the officer's subjective motives are irrelevant." United States v. Chavez, 534 F.3d 1338, 1344 (10th Cir. 2008).

Without question, the initial stop of Defendants' vehicle was appropriate, since Trooper Koch observed the violation of a traffic ordinance. United States v. Botero-Ospina, 71 F.3d 783, 787 (10th Cir. 1995). Specifically, Trooper Koch observed Defendants traveling in excess of the posted speed limit.

Defendants contend that the duration of the traffic stop exceeded that which is permissible under the Fourth Amendment. This Court does not find the stop lasted longer than was necessary to investigate the traffic violation, verify the validity of Defendant Williams', and verify the validity of the rental agreement on the vehicle Defendant was driving. In the circumstance of a routine traffic stop, an officer is permitted to request the driver's license and vehicle registration, conduct a computer check, and issue a citation. United States v. Gonzalez-Lerma, 14 F.3d 1479, 1483 (10th Cir.), *cert. denied*, 511 U.S. 1095, 114 S.Ct. 1860 (1994). However, the detention can "last no longer

than is necessary to effectuate the purpose of the stop," and "[t]he scope of the detention must be carefully tailored to its underlying justification." Florida v. Royer, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325 (1983). A review of the dash cam recording indicates that the stop lasted approximately 13 minutes, which was not of an unreasonable duration. The majority of this time was expended in verifying the validity of the rental agreement on the vehicle with the rental agency. Trooper Koch stated a legitimate and justifiable concern in confirming that the rental vehicle was not stolen, which he stated he verifies on every stop involving a rental vehicle.

Having determined that the duration of the stop was reasonable, however, this Court would be remiss if it did not comment on the additional bases provided by Trooper Koch in allegedly forming a "reasonable suspicion of criminal activity" by Defendants. Many of Trooper Koch's stated bases were of dubious value as a foundation to form a reasonable suspicion and, in other instances, simply did not exist from a review of the video evidence. Defendant Williams' nervousness (other than repeatedly biting his lip) and hesitation in answering questions perceived by Trooper Koch is not apparent from the video. Indicators such as the use of a term of respect such as "sir", new tags on gym bags,

7

and pictures on the dashboard leaves this Court contemplating that Trooper Koch's suspicions based upon these observations were largely illusory and could be found in virtually any stop – whether involving the presence of illegal contraband or innocent members of the traveling public.

This Court, however, need not rely upon Trooper Koch's perceptions to find the stop and subsequent search proper. Initially, the Court notes that the stop was not delayed while the drug dog was circled around Defendants' vehicle. Moreover, an exception to the Fourth Amendment's protection against unreasonable searches and seizure is found under the "automobile exception" "which allows police to 'search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained.'" United States v. Burgess, 576 F.3d 1078, 1087 (10th Cir. 2009) quoting California v. Acevedo, 500 U.S. 565, 580 (1991). Probable cause is established if "under the totality of the circumstances", "a fair probability" exists that the vehicle contains contraband or evidence. United States v. Benard, 680 F.3d 1206, 1210 (10th Cir. 2012). The drug dog's alert (or indication) gave the officers probable cause to search the interior of the vehicle for controlled substances. *See* Shaw v. Schulte, 36 F.4th 1006, 1017 (10th Cir. 2022) ("A dog alerting

during the sweep of a vehicle provides officers with probable cause to search the vehicle."); United States v. Moore, 795 F.3d 1224, 1232 (10th Cir. 2015) ("We have held that an alert, or a change in a dog's behavior in reaction to the odor of drugs, is sufficient to establish probable cause to search a vehicle, and that a final indication is not necessary.").

This Court concludes Defendants' detention during the traffic stop was of a reasonable duration and the subsequent search of the vehicle which Defendants occupied was not violative of the Fourth Amendment of the United States Constitution such that the evidence derived from the stop and search should be suppressed.

IT IS THEREFORE THE RECOMMENDATION OF THIS COURT that Defendant Teon Raynard Robbins' Motion to Suppress (Docket Entry #59) as joined by Defendant Antwon Marquis Williams (Docket Entry #62) be **DENIED.**

The parties are herewith given fourteen (14) days from the date of the service of these Findings and Recommendation to file with the Clerk of the court any objections.  The failure to object to the Findings and Recommendation within the fourteen-day period will preclude appellate review of the judgment of the District Court based on such findings.

IT IS SO ORDERED this 7th day of August, 2023.

_____
JASON A. ROBERTSON
UNITED STATES MAGISTRATE JUDGE