IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. CR-23-037-RAW |
| | ) |
| TEON RAYNARD ROBBINS and | ) |
| ANTWON MARQUISE WILLIAMS, | ) |
| | ) |
| Defendants. | ) |

## ORDER

Before the court are the objections of the defendants to the Findings and Recommendation of the United States Magistrate Judge. The Magistrate Judge recommended that the motion to suppress of defendant Robbins, joined by defendant Williams, be denied.

Under Rule 59(b)(1) F.R.Cr.P., the district court may refer suppression motions to a Magistrate Judge for a recommended disposition. In considering an objection, the district court must conduct de novo review and "may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions." Rule 59(b)(3). The undersigned has reviewed the record, including the hearing transcript and the video evidence.

The Magistrate Judge accurately described the sequence of events, and neither defendant has objected in that regard. The truck occupied by the defendants was stopped by Trooper Koch at approximately one minute into the dash cam video. Koch approached the passenger side door and told the occupants the vehicle was speeding and he was going "to

write you a warning real quick." Koch asked defendant Williams (the driver) to sit in the passenger seat of the patrol car and Koch sat in the driver's seat. Koch asked Williams questions about where the vehicle had been and to whom it belonged. Williams related that the vehicle was actually a rental and that this had been accomplished by defendant Robbins (the passenger).

At approximately 6:40 on the video, Koch again walked to the passenger side of the truck and asked Robbins if Robbins had a copy of the rental agreement. There was delay as Robbins did not have a copy and called the car rental agency in North Carolina. At 11:02, Koch returned to the patrol vehicle. At 11:30, a second trooper (Craft) arrived on the scene – having been contacted by Koch – and walked to the passenger side of the truck to obtain Robbins' phone, a copy of the rental agreement having been emailed to the phone.

At 12:11, Craft evidently asked Robbins to exit the truck. Craft patted Robbins down at 12:18. At 12:32, Craft evidently asked Robbins to put distance between Robbins and the truck. At 12:46, Craft evidently asked Robbins to step farther away from the truck. At 13:17, Craft conducted a dog sniff around the truck. At 13:36, the dog "alerted." Upon a search of the truck, illegal drugs were found.

The Magistrate Judge found that the initial traffic stop was appropriate (#74 at 6) and neither defendant has objected to this finding. Accordingly, this discussion focuses on the subsequent events. The Magistrate Judge found "the duration of the stop was reasonable." (#74 at 7).

In *Illinois v. Caballes,* 543 U.S. 405 (2005) the Supreme Court held that "a dog sniff conducted <u>during</u> a lawful traffic stop does not violate the Fourth Amendment's proscription of unreasonable seizures." *Rodriguez v. United States,* 575 U.S. 348, 350 (2015)(emphasis added). In *Rodriguez,* the Court addressed "the question whether the Fourth Amendment tolerates a dog sniff conducted <u>after</u> <u>completion</u> of a traffic stop." *Id.* (emphasis added). Stated differently, the Court said it was resolving the question "whether police routinely may <u>extend</u> an otherwise-completed traffic stop, absent reasonable suspicion, in order to conduct a dog sniff." *Id.* at 353 (emphasis added).

The stating of the issue makes manifest the difficulty in application. How does a district court ascertain when a traffic stop has been completed and when it has been improperly prolonged? Judge Baldock has described "the somewhat confused state of Supreme Court and Tenth Circuit precedent on the question when a traffic stop is unreasonably prolonged in violation of the Fourth Amendment." *United States v. Hayes,* 62 F.4th 1271, 1273 (10th Cir.2023)(Baldock, J., concurring).

"Authority for the seizure thus ends when tasks tied to the traffic infraction are – or reasonably should have been – completed." *Rodriguez,* 575 U.S. at 354. "An officer may not prolong the traffic stop to conduct an unrelated investigation without reasonable suspicion that the detainee is engaged in criminal activity." *United States v. Leon,* 80 F.4th 1160, 1165 (10th Cir.2023). "The moment at which this reasonable suspicion becomes necessary is known as the '*Rodriguez* moment.'" *Id.*

Permissible actions related to a traffic stop's "mission" include those steps necessary to issue a ticket or warning, as well as ordinary inquiries incident to the traffic stop, such as checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. *United States v. Hernandez-Quintero,* 2023 WL 5815640, *3 (10th Cir.2023).[1] Diversions from the mission, on the other hand, include arranging for or conducting a dog sniff and on-scene investigations into other crimes. *Id.*

On the one hand, the Tenth Circuit has stated that precedent does not prohibit in the name of efficiency "all conduct that in any way slows the officer from completing the stop as fast as humanly possible." *United States v. Cortez,* 965 F.3d 827, 837 (10th Cir.2020). This is because "reasonableness – rather than efficiency – is the touchstone of the Fourth Amendment." *Id.* at 838. On the other hand, the Tenth Circuit has also stated "[e]ven *de minimis* delays caused by unrelated inquiries violate the Fourth Amendment in the absence of reasonable suspicion." *United States v. Frazier,* 30 F.4th 1165, 1173 (10th Cir.2022).

The Tenth Circuit has articulated the following test: "Under *Rodriguez*, therefore, an unlawful seizure occurs when an officer (1) diverts from the traffic-based mission of the stop to investigate ordinary criminal conduct, (2) in a way that 'prolongs' (i.e., adds time to) the

---

[1] Or a rental agreement. *See United States v. Cates,* 73 F.4th 795, 806 (10th Cir.2023). "A driver's inability to produce a rental agreement may justify continued detention for the purpose of investigating his authority to drive the vehicle." *Frasier,* 30 F.4th at 1177. "[T]he use of a rental car alone does not contribute to reasonable suspicion." *United States v. Batara-Molina,* 60 F.4th 1251, 1257 (10th Cir.2023).

stop, and (3) the investigative detour is unsupported by an independent reasonable suspicion. *Id.*

The court sees no authority *requiring* that a district court find the existence of a "*Rodriguez* moment." It is possible to view a sequence of events as a unity (as the Magistrate Judge evidently did here), with <u>no</u> *Rodriguez* moment. Under the first two prongs of the *Frazier* test, if the officer *contemporaneously* requests a dog sniff while continuing to complete the procedural requirements of issuing a ticket or warning, a conclusion of no Fourth Amendment violation may result. *See United States v. Mayville,* 955 F.3d 825, 833 (10th Cir.2020)(<u>because</u> the dog sniff and alert were contemporaneous with the troopers' reasonably diligent pursuit of the stop's mission, the subsequent search of the defendant's vehicle and discovery of evidence did not violate his Fourth Amendment rights).

Defendant Robbins contends that the "*Rodriguez* moment" took place when Trooper Craft delivered the copy of the rental agreement to Trooper Koch. (#78 at 5). Likewise, defendant Williams: "Here, troopers had all information necessary to issue a warning approxiamtely eleven minutes into the subject traffic stop." (#79 at 4).

In response, the government appears to reject the existence of a "*Rodriguez* moment" in this case. The government asserts "the free air sniff did not extend the length of the traffic stop" (#82 at 1) because "[t]he officer's request for a narcotic detection dog simultaneously with a request related to the overarching mission of the traffic stop did not unreasonably prolong the stop." (*Id.* at page 7 of 12 in CM/ECF pagination).

The government uses a different temporal analysis than do the defendants. The government asserts that the proper measuring point is when Trooper Koch's request for Trooper Craft to arrive on the scene took place, and that the request was simultaneous with Trooper Koch authoring the traffic citation. "Furthermore at the time Trooper Koch made the *request*, he was making a reasonable effort to confirm the existence of an absent rental agreement." *(Id.* at page 9 of 12 in CM/ECF pagination)(emphasis added). Defendants contend that the proper measuring point is not when the request was made, but when Trooper Koch received the rental agreement, and that Trooper Craft's actions of removing defendant Robbins from the truck, patting him down, having him move away from the truck, and conducting the dog sniff, constitute the improper prolongation of the traffic stop.

In the absence of reasonable suspicion, the undersigned would agree with defendants. There is no full view video of Trooper Koch inside the patrol vehicle, so judging his diligence and efficiency is not completely possible.[2] Moreover, Trooper Koch testified as follows:

> Q: Do you acknowledge that after Trooper Craft got there, it was another three minutes before any dog was taken out and walked around the car?
>
> A: I don't know without watching the video. I couldn't tell you how long it was –
>
> Q: And you could have completed the stop in three minutes once you got the rental agreement, couldn't you?
>
> A: Possibly.

---

[2]"How could diligence be gauged other than by noting what the officer actually did and how he did it?" *Rodriguez,* 575 U.S. at 357.

>Q: All you had to do was write the rental agreement information in there and press a button and print it off, right?

>A: Yeah, there was probably not a whole lot left to do at that point.

>>(#89 at 40, lines 1-11).

Trooper Koch also testified that the did not think the warning was actually completed before the defendants were placed under arrest. *(Id.* at 49, lines 3-4). Therefore, this case demonstrates that it is not a workable test to find that a traffic stop is completed for purposes of *Rodriguez* when the ticket or warning is finished and handed to the driver.[3] An officer might conduct the traffic stop more or less "leisurely" to allow more time for a dog sniff.

The Tenth Circuit has explained that "officers may not undertake safety precautions for the purpose of lengthening the stop to allow for investigations of unrelated criminal activity." *United States v. Mayville,* 955 F.3d 825, 831 (10th Cir.2020). *See also United States v. Cortez,* 965 F.3d 827, 840 (10th Cir.2020)(analyzing whether officer's questions during a traffic stop "were posed as a pretext to 'facilitate' a detour into investigating other crimes."). In *United States v. Cates,* 73 F.4th 795 (10th Cir.2023), at the time of the dog alert, the first trooper had not completed the warning <u>and</u> Cates had not located his rental agreement. *Id.* at 801. In the case at bar, by contrast, Trooper Craft had delivered a copy of the rental agreement to Trooper Koch. The undersigned finds that there was a "*Rodriguez* moment"

---

[3] A dissenting opinion described the majority's rule as "constitutional protection linked to the characteristics of the individual officer conducting the stop," e.g., a particularly efficient officer or an officer with access to better technology. *Rodriguez,* 575 U.S. at 361 (Thomas, J., dissenting).

triggered by Trooper Koch's receipt of the rental agreement and the very brief time required thereafter to complete the warning.[4]

After the purpose of the traffic stop is completed, further detention for purposes of questioning unrelated to the initial traffic stop is impermissible unless (1) the officer has an objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring, or (2) the initial detention has become a consensual encounter. *United States v. Bradford,* 423 F.3d 1149, 1156-57 (10th Cir.2005). The government has not contended that this traffic stop had become a consensual encounter.

Trooper Koch testified that he did have reasonable suspicion of criminal activity. (#89 at page 19, lines 1-5). As summarized in the government's response, he based this conclusion on (1) the nervousness displayed by Defendant Williams; (2) the new gym bags with tags; (3) the defendants were operating a rental vehicle; (4) the picture of a child on the dashboard; (5) Defendant Williams telling Trooper Koch a completely different travel story than Defendant Robbins; and (6) the fact that Defendant Williams was being untruthful regarding his relationship with Defendant Robbins. (#82 at page 11 of 12 in CM/ECF pagination).

Whether a dog sniff is supported by reasonable suspicion is an objective question based on the totality of the circumstances, which looks to whether the facts available to the detaining officer, at the time, warranted an officer of reasonable caution in believing the action taken

---

[4] "Under *Rodriguez,* it makes no difference whether an investigative detour occurs before or after the completion of the stop's traffic-based mission. The question is whether the stop would have ended sooner had the officer continued to work diligently on the traffic-related tasks rather than pursue an unrelated investigation." *Frazier,* 30 F.4th at 1180.

was appropriate. *Batara-Molina,* 60 F.4th at 1256. Reasonable suspicion requires a particularized and objective basis for suspecting criminal conduct under a totality of the circumstances. *Frazier,* 30 F.4th at 1174. While reasonable suspicion cannot be based upon a mere hunch, it also need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard. *Id* The government bears the burden of satisfying this standard, but it is not an onerous one. *Id.*[5]

The Magistrate Judge found that "*[m]any* of Trooper Koch's stated bases were of dubious value as a foundation to form a reasonable suspicion and, in other instances, simply did not exist from a review of the video evidence." (#74 at 7)(emphasis added). The undersigned agrees. The government tries to salvage reasonable suspicion by asking the undersigned for an ultimate finding to the contrary based on defendants' untruthful statements regarding their relationship and their travel plans. (#82 at page 11 of 12 in CM/ECF pagination).[6]

---

[5] The Magistrate Judge correctly noted that a reliable narcotics-detection dog's alert to a vehicle suffices to establish probable cause that the vehicle contains contraband. *See United States v. Chavez,* 2021 WL 4438742, *5 (10th Cir.2021). Under the automobile exception, once probable cause is established, the officer may search the entire vehicle, including the trunk and all containers that might contain contraband. *Id.* On the other hand, "[u]nder the fruit-of-the-poisonous-tree doctrine and within the context of a motion to suppress in a criminal case, the dog's alert would not save the proceeds of the search if [the officer] lacked reasonable suspicion to further detain the [defendants] while waiting for the K-9 unit to arrive." *Shaw v. Schulte,* 36 F.4th 1006, 1017 (10th Cir.2022). This is the essence of the case at bar.

[6] The government did not file its own formal objection to the Findings and Recommendation, but has raised what amounts to an objection in its response to defendants' objections. The undersigned elects to address it. "Reasonable suspicion" is necessarily a part of de novo review in this case.

Specifically, Trooper Koch testified that defendant Williams stated, after considerable pause, that the defendants had been to Yukon, Oklahoma. (#89 at 17-18). Defendant Robbins, however, stated they had been to California, New Mexico, and Arizona. (*Id.* at 18, lines 18-25). The court finds that the other statements cited by Koch, whether defendant Robbins was the uncle of defendant Williams, or was "considered" an uncle (#89 at 18, lines 5-13), do not bear on reasonable suspicion.

This presents another difficult question. The government cites the statement in *United States v. Batara-Molina,* 60 F.4th 1251 (10th Cir.2023) that when the sufficiency of facts to establish reasonable suspicion is "right on the line," the court should give deference to an officer "to distinguish between innocent and suspicious actions." *Id.* at 1259. In that case, however, the court found three facts on which the officer permissibly relied: (1) the cover odor, (2) the third-party rental, and (3) the details of the rental agreement. *Id.* In the case at bar, the government relies on the inconsistent or implausible statements standing alone. Also, given the court's determination as to Trooper Koch's credibility in some respects, perhaps less deference is due his judgment as to reasonable suspicion.[7] For example, Trooper Koch testified that he viewed his assignment as looking "beyond the initial traffic stop, the initial traffic violation, and to identify people that are involved in criminal activity" and that his questioning bore on that purpose. (#89 at 45, lines 18-25 – 46, line 1).

---

[7]The existence and content of the contradictory statements do not depend on Trooper Koch's credibility. They are corroborated by the audio of the traffic stop.

If this court were writing on a blank slate, it might be inclined to conclude reasonable suspicion was not present. Rather than a blank slate, the court finds the following: "As with unusual travel plans, inconsistencies in information provided to the officer during the traffic stop may give rise to a reasonable suspicion of criminal activity." *United States v. Wood,* 106 F.3d 942, 947 (10th Cir.1997). Although some consistencies count only when combined with other factors, varying statements by a driver and passenger about travel plans can matter. *See United States v. Orozco-Rivas,* 810 Fed.Appx. 660, 667 (10th Cir.2020)(citing *United States v. Kopp,* 45 F.3d 1450, 1453-54 (10th Cir.1995)). These statements, coupled with the Tenth Circuit's holding that the government's burden as to reasonable suspicion is not onerous, lead the court to find the existence of reasonable suspicion. In turn, reasonable suspicion provides the legal "bridge" between the "*Rodriguez* moment" and the dog alert (just a few minutes later) resulting in probable cause to search.

Regarding a motion to suppress, the government has the ultimate burden to show compliance with the Fourth Amendment. *See United States v. Torres,* 987 F.3d 893, 898 (10th Cir.2021).[8] In this court's view, by quite a narrow margin, the government has met its burden.

It is the order of the court that the objections of the defendants (#78 & #79) to the Findings and Recommendation are overruled. The Findings and Recommendation (#74), as modified herein, are adopted. The motion of defendant Robbins to suppress (#59), joined by defendant Williams (#62), is hereby denied.

---

[8]This is distinct from the "not onerous" burden regarding reasonable suspicion.

ORDERED THIS 30ᵀᴴ DAY OF OCTOBER, 2023.

_____
Ronald A. White
United States District Judge
Eastern District of Oklahoma